The Chief Justice
delivered the opinion of the Court:
The complainants seek to have a trust declared in their favor on property known as the east half of lot 11 in the Howard University subdivision of the farm of J. A. Smith, commonly known as ‘ ‘ Effingham, ’ ’ in the District of Columbia. The complainants claim that the right to this relief grows out of the following alleged state of facts: On February 7, 1870, Isaac Braxton, since deceased, together with one Henry Jackson, contracted with the Howard University to buy .said lot 11 for seven hundred and twenty-four dollars and sixty-eight cents. Jackson subsequently paid his half of that amount and received a deed from the University for the west one-half of said lot in which it was recited that it was executed in pursuance of the before mentioned contract. Isaac Braxton, *359 Sr., died intestate July 9, 1874, having paid two hundred dollars on said contract, and built a residence on the east half of said lot. He left surviving him his widow, Eliza, and four children, named Isaac, Jr., arid John, complainants, and Nathaniel, defendant, and also a son named Morris, the last of whom is believed to be dead, having been absent and not heard from for more than seven years. On December 24,' 1875, the Howard University made a deed conveying the east one-half of lot 11, reciting that it was in pursuance of said contract, to Eliza Braxton, widow of Isaac. On July 18, 1881, while, as is alleged by the complainants, Eliza Braxton, was in feeble health and living in the same house with Nathaniel Braxton, and apart from the complainants, she, without any valuable consideration, made a deed of the said east half of lot 11 to the defendant, Nathaniel Braxton. It is further urged that she had often told the complainants that they should have their equal share of the property after her death. Nathaniel subsequently mortgaged the premises to secure a loan of $ 1,200, and the defendants Johnson and •Caywood are trustees to Middleton, payee in the notes, and the Howard University is the present holder of the notes represented by the loan. The facts so alleged by the complainants are, in the main, admitted by the defendant, Nathaniel Braxton, and by the Howard University, but some of them are explained and some additional facts are averred in their answer to avoid the force of the facts admitted. The Howard University explains that in the lifetime of Isaac Braxton, he was in default in making his payments according to (the provisions of the contract, and that there was a provision in the contract providing for the forfeiture of the rights of the purchaser Braxton, in the event that he became in default, at the option of the Howard University, and that the Howard University after he became in default served upon Braxton a written notice advising him that he was not •only in default, but in consequence of it the Howard University availed itself of the privilege in the contract of forfeiture and advising him that his interest was forfeited and his payments, so far as made, should be regarded as pay *360 ments for the fair rent of the premises during the time that he was in possession. Thereupon it is said by the Howard University that an agreement was made between it and Mrs. Braxton, the wife of Isaac Braxton, by which she became the purchaser, and by which she undertook to make the payments that were still due upon the property according to the contract with Isaac Braxton; and thereafter she did make payments to the University for the land until about the time that she conveyed in 1881 to her son Nathaniel Braxton. But previous to and about the time of the conveyance to her in 1875, she executed a deed of trust and secured a loan for $150 and paid off the remainder of the purchase money to the Howard University. Nathaniel Braxton insists upon the same facts stated in the answer of the Howard University and further insists that he became the purchaser for a valuable consideration in 1881, from his mother, and that 'the deed which he received from his mother for the premises was in consideration of the sum of $200 in hand paid; and he avers further that he afterwards paid a loan made by his mother of $150, with accruing interest and costs in connection with it, and that the .latter money was separate and apart from the $200 which he avers he paid to his mother at the time of the execution of the deed by her to him; also that he paid taxes in arrears and current taxes and has made valuable improvements. He denies that the complainants have any interest whatever, or that his mother" ever promised them any interest in the property after her death, or that she would make a will by which they would get the property after her death. Proof was taken by the complainants. There are certain interrogatories attached to the bill which are answered by Nathaniel Braxton and also by the Howard University, but that is all in the way of proof that comes from the defense in support of their answers. We think it is shown, taking the pleadings and the evidence produced by the complainants, that a contract was made between Isaac - Braxton and Henry Jackson with the Howard University for the purchase of the land. It is not shown that the condition, of forfeiture mentioned by the Howard University in their *361 answer was actually included in the contract. The contract has not been produced and appears to have been lost or mislaid. Upon the part of the University it is simply a matter of supposition as to what it contained. The testimony of Jackson, who was the co-purchaser with Braxton of this entire lot, is to the effect that he never had heard of any such condition in the joint contract which he made with Braxton for the entire lot, nor was anything ever mentioned to him of a condition of forfeiture, either as between- him and the University, or as between Braxton and the University. There is then no evidence to support the averment in the answer with respect to a condition of forfeiture being in the contract, nor is there any evidence to support the averment in the answer of the University that an arrangement was made with Mr. Braxton by which she became the substituted purchaser of this lot. The recital in the deed to Eliza Braxton that it is executed in pursuance of the contract with Isaac Braxton repels the idea that it was executed by virtue of any contract with her as alleged in the answer of the University. It is clearly shown that there was a contract in writing between Braxton and the Howard University; that he made payments upon it in his lifetime, leaving a sum due at his death; that he built a house, more or less valuable, upon the lot and lived in it during his life, and at his death the widow remained in possession. The execution of the deed to Mrs. Braxton by the Howard University, the execution of the deed of trust to secure the loan of $150, and the payment of that sum to the Howard University appear to have been contemporaneous transactions. There is no positive evidence that the widow ever paid any sum of money of her own after the death of her husband until the date when she executed a deed of trust to secure a loan of mone'y which she applied to the final payment of the purchase-money to Howard University. There is some evidence that indicates that she could not have made any such payments. She was entirely destitute and dependent, as it appears, upon the exertions of her sons, principally the complainants, and the kindness of her friends for her support. She was in feeble health and unable to labor so *362 as to earn money, and it is shown quite clearly that it would have been a matter of impossibility for her to have earned money, or that she had money from any source which she could have appropriated to the payment of the purchase-money after her husband’s death, aside from the money that she borrowed when she received the title from the Howard University, the payment of which was secured as aforesaid by a deed of trust, no part of which was ever paid or satisfied during her lifetime. This deed of trust upon the premises was afterwards discharged and liquidated by Nathaniel. There is no sufficient evidence that Isaac Braxton ever surrendered his contract to the Howard University. Upon the death of Isaac Braxton his equitable title to the premises descended to and vested in his heirs at law, and the deed of the Howard University conveying the legal title to Mrs. Braxton must be held to be in trust for his heirs. . Nathaniel took the property with full knowledge of all the facts, and we do not find from the evidence in the case that he ever paid any money beyond the discharge of the trust created by his mother for $150 and something in the way of taxes and improvements either at the time of his purchase or since.
The evidence shows that Nathaniel Braxton, in the year 1889, executed a deed of trust upon this property to secure the payment of $1,200, which he borrowed, to James B. Johnson and A. S. Caywood, trustees, for the benefit of Rosa Middleton, to whom the note was made payable, which note was negotiated to Mrs. Bowen, who advanced the money to Nathaniel Braxton.
The evidence further shows that. Mrs. Bowen, through Johnson, one of the trustees, who was at the time of purchase by Isaac Braxton and has ever since been the Secretary of the University, negotiated the sale of the note to the Howard University, and it is at this time the holder‘and owner of the $1,200 note secured by the said.deed of trust upon this property.
Under the circumstances, we think, that there is a trust arising in a general way in favor of the heirs of Isaac Braxton, to recover the title and possession of this property. *363 This, however, is subject, to some equities. In the first place we think that whatever Nathaniel Braxton paid in the way of discharging the obligation which his father had entered into and ‘which his mother subsequently assumed when she acquired the legal title, he has an equitable right to receive out of the proceeds of this property, superior to the trust in favor of the complainants and himself, as heirs of Isaac Braxton. It appears from the evidence that he paid about the sum of $200, and as he has conveyed his interest to trustees to secure the payment of $1,200, the obligation for which is now held by the Howard University, equity will require that the latter be substituted to his right to receive the $200, with accruing interest, in favor of the complainants and that this amount be in discharge to the extent thereof of the $1,200 note now held by the University. Again, Nathaniel Braxton being one of the heirs of Isaac Braxton and being entitled under this general declaration of trust to one-third of the net proceeds of the sale of these premises, his interest of one-third will be subject to payment of the loan of $1,200 which he secured, the proceeds of which he received and, as shown by the evidence, applied to his private use.
We think the evidence shows that Mrs. Bowen was a bona fide purchaser without. notice and that she was entitled to protection as against the equities of the complainants in this land when she owned the note, and being so entitled her assignee, the Howard University, is entitled to take her position in that respect. Although it might be said upon this record that the Howard University purchased with notice; yet, applying the familiar rule that a purchaser of a negotiable note before maturity who has notice of equities from one who has no notice of the same shall be protected to the same extent that his vendee would have been, it follows that the University must hold the $1,200 note unaffected by the equities of the complainants and is entitled to a full discharge of the same from the proceeds ofihe sale of the land in question. And the same rule applies to the lien or security for the payment of the note created by the deed of trust which followed the assignment of the note to Bowen and from. *364 her to the University and is protected to the same extent as the note.
It was said, however, at the hearing, without dispute, that the deed of trust executed by Nathaniel Braxton contained another tract of land, owned by Nathaniel, which tract, since the decree in special term was made, has been sold and quite a large sum realized, but not sufficient to discharge the entire loan secured by the deed of trust executed by Nathaniel. This being so the heiré, who are complainants-in this case» have the clear right to have the tract in which they have no interest, whether it has or has not been sold, first subjected to the payment of the loan made by Nathaniel of $1,200 and when that shall have been done the Howard University will be entitled to have out of the proceeds of the tract first named, first, $200, being the sum that Nathaniel paid to discharge the lien created upon this property by his mother; secondly, the one-third of the net proceeds which would otherwise go to Nathaniel; and finally, if after the application of the before mentioned funds in the order named, there shall yet remain some part of the debt evidenced by the note of $1,200 unpaid, the same should be liquidated out .of that portion of the proceeds of the sale of the tract originally purchased, as before stated, by Isaac Braxton, senior, which would otherwise belong to the plaintiffs under the decree in this case, and that any remainder of the fund arising from such last named sale be paid to the complainants.
A sale of the premises is ordered and the cause remanded to the Equity Court, with directions to refer the same to the auditor to state an account between the complainants and Nathaniel Braxton, in which he shall be charged with the use and occupation of the premises since his assumed purchase of the same, and credited with any necessary and substantial improvements he has made thereon, and for all taxes that he has paid; and for all other orders necessary and proper for the full execution and enforcement of the decree of this Court.